## Powers and Duties of Police Officers Regarding Arrests

VICTOR WRIGHT, Deputy Attorney General, and
THOMAS D. MCBRIDE, Attorney General, June 2, 1958.
—It has come to the attention of the Department of
Justice that members of the Pennsylvania State Police
are of the belief that the Act of April 23, 1909, P. L.
141, 19 PS §§4, 5,[1] authorizes police officers to incar-
cerate a person suspected of crime for a period of up
to 48 hours, pending completion of an investigation,
whether or not a charge has been lodged against the
suspect. We have deemed it desirable, in addition to
advising you as to the applicability of the Act of 1909,
to inform you generally as to the powers and duties of
police officers regarding arrests.[2]

The Constitution of Pennsylvania, article I, sec. 8,
provides as follows:

"The people shall be secure in their persons, houses,
papers and possessions from unreasonable searches
and seizures, and no warrant to search any place or
to seize any person or things shall issue without de-
scribing them as nearly as may be, nor without prob-

---

[1] Section 4: "Sheriffs, constables, members of the State constabu-
larly, or other persons authorized by the laws of this Commonwealth
to make arrests, hereafter shall have the use, for a period not to
exceed forty-eight hours, of borough and township lockups and city
or county prisons, for the detention of prisoners until they can be
disposed of according to law, if found necessary by the officer in
charge."

Section 5: "Boroughs, cities, and townships shall be entitled
to receive a compensation of fifty cents per day, of twenty-four
hours, for each prisoner so incarcerated, from the treasury of the
county having jurisdiction over the prisoner."

[2] This opinion is limited solely to the question of legality of
arrests and the procedures immediately following. It is not to be
construed to apply to such matters as the admissibility of evidence
obtained as a result of an illegal arrest.

able cause, supported by oath or affirmation subscribed to by the affiant."

"But it is no where said, that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery, must be arrested on the spot or suffered to escape. . . . These are principles of the common law, essential to the welfare of society, and not intended to be altered or impaired by the constitution. . . .": Wakely v. Hart, 6 Binney 316, 318, 319 (1814).

"It has long been the settled law in this State that a police officer, or even a private citizen, may arrest for felony without a warrant . . .": Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 445, 71 A. 2d 799 (1950). The authority of a police officer to arrest without warrant is further succinctly stated in 3 Pennsylvania Law Encyclopedia, Arrest §4:

"A police officer may arrest without a warrant for a felony if he has reasonable grounds to believe that the felony has been committed and that the person arrested is the felon, or for a misdemeanor if the misdemeanor is committed in the officer's presence."

It cannot be contended with reason that the authority of an officer is greater when he is *not* armed with a warrant than it is where he has in his possession for execution a warrant lawfully issued by proper judicial authority. Arrest without a warrant can be, and is, made lawful by the existence of circumstances which make the procurement of a warrant unfeasible: Burk v. Howley, 179 Pa. 539, 36 Atl. 327 (1897) ; Wakely v. Hart, supra; Sadler, Criminal and Penal Procedure in Pennsylvania (2nd ed.), §80. Yet a warrant is a command (and an authorization) to the officer to whom it is directed to take the body of the accused and bring him before the issuing magistrate to answer the charge.

The command is unambiguous and inexorable[3], it does not admit of a construction which would allow temporary detention of the prisoner for the officer's own purposes apart from the execution of the warrant. "The warrant having been given to the constable, it becomes his duty to take the person named therein into custody and to return and produce his body as directed": Sadler, op. cit., §75. In the case of an arrest without warrant, the duty of the arresting officer is equally clear: ". . . to take the accused before a magistrate for formal accusation and hearing *before he shall have been locked up*": Sadler, op. cit., §80. (Italics supplied.)

Although there is no prescribed time within which a preliminary hearing must be held (Commonwealth v. Shupp, 365 Pa. 439, 446, 75 A. 2d 587 [1950]),[4] the "right of an accused to a preliminary hearing, with

---

[3] Typical of the commands of arrest warrants are those found in the forms suggested by Sadler, op. cit., p. 583:

". . . These are, therefore, to command you to take the said E. F. *and bring him forthwith before said justice* to answer the said complaint, and further to be dealt with according to law."

". . . You are hereby commanded to take the body of C. D. . . . *and bring him before me*, J. P., a justice of the peace . . . further to be dealt with according to law . . ." (Italics supplied.)

[4] In Lyons v. Oklahoma, supra, the Supreme Court stated in Footnote 2, pp. 597-8, that ". . . the effect of the mere denial of a prompt examining trial [preliminary hearing] is a matter of state, not of federal, law. To refuse this is not a denial of equal protection under the Fourteenth Amendment although it is a fact for consideration on an allegation that a confession used at the trial was coerced." See also Commonwealth v. Johnson, 365 Pa. 303, 74 A. 2d 144 (1950), reversed on another ground sub nom. Johnson v. Pennsylvania, 340 U. S. 881, 71 S. Ct. 191, 95 L. Ed. 640 (1950). But semble the denial of a prompt preliminary hearing was an ingredient of the decisions reached in Watts v. Indiana, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949); Turner v. Pennsylvania, 338 U. S. 62, 69 S. Ct. 1352, 93 L. Ed. 1810 (1949); and Harris v. South Carolina, 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1815 (1949).

certain exceptions,[5] has become a part of the law of this Commonwealth. . . .": Commonwealth v. O'Brien, 181 Pa. Superior Ct. 382, 393-4, 124 A. 2d 666 (1956). "The arrested person may, of course, be 'booked' by the police" (Mallory v. United States, 354 U. S. 449, 454, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 [1957]), and interrogated by them: Commonwealth v. Shupp, supra. "The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process": Lyons v. Oklahoma, 322 U. S. 596, 601, 64 S. Ct. 1208, 88 L. Ed. 1481 (1944); Commonwealth ex rel. Sleighter, v. Banmiller, 392 Pa. 133, 137, 139 A. 2d 918 (1958).[6]

But an arrest, with or without warrant, is justifiable *only* if made on probable cause that a specific crime has been committed. The books will be searched in vain for any authority in a police officer or anyone else to detain a person in a prison, jail, stationhouse or elsewhere "on suspicion" that he is guilty of a crime and pending an investigation to determine whether he should be charged with one. "The police may not arrest upon mere suspicion but only on 'probable cause'. . . . It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause' ": Mallory v. United States, supra. In Burk v. Howley, supra, a person was detained at a police station for eight days on "suspicion" without any charge being made against her before a magistrate. The Supreme Court held, at page 550:

---

[5] Not here pertinent.

[6] Cf. Mallory v. U. S., supra, where the issue was the application of a Federal rule which requires that upon an arrest the arrested person shall be taken before a United States Commissioner "without unnecessary delay." There is no comparable rule or statute in Pennsylvania: Commonwealth ex rel. Sleighter v. Banmiller, supra, at p. 138; Commonwealth v. Johnson, supra.

". . . No comment is needed on such conduct; that an humble citizen who has always borne a good character can on mere suspicion, at the instigation of a private person, be arrested, locked up and detained in a station house with its disagreeable surroundings for eight days, without information or warrant, and this with the knowledge of, if not with the connivance of two officers of the law, suggests its own comment. . . . His purpose was to extort a confession of guilt, a revival in a somewhat milder form of the rack and thumbscrew process to establish crime, and just as flagrantly unlawful. . . ."

The existence of probable cause, or lack of it, is a matter for judicial determination, although a police officer is responsible in the first instance for an evaluation of the information in his possession at the time of arrest without warrant or at the time of his application for a warrant by way of filing an information, in order to satisfy himself of the existence of probable cause. "A preliminary hearing is held primarily to prevent the detention of a person for a crime which was never committed or of a crime with which there is no evidence of his connection. It is primarily to prevent a person from being imprisoned or required to enter bail when there is no evidence to support a charge against him": Commonwealth v. O'Brien, supra, at page 396.

Summing up, then, before an arrest may lawfully be made, the officer should be in possession of credible information which causes him to believe that a crime has been committed and that a certain person or persons committed it, i.e., that there is "probable cause." An officer may not lawfully arrest or detain a person merely "on suspicion." [7] If time and other circum-

---

[7] There are no such charges as, for example, "suspicion of murder," "suspicion of larceny," etc., known to the law. The only proper and lawful charges are those of the respective crimes themselves.

stances permit, he is to present the facts under oath, by way of an information, to a proper judicial officer and thereby procure an arrest warrant. If, however, the exigency of the situation is such that it is impracticable to procure a warrant, he may arrest without one: For a felony, at any time; for a misdemeanor, only on view of its commission.

After the arrest has been effected, the officer is under a duty to proceed without unnecessary delay to take his prisoner before a committing magistrate where, if the arrest was made without a warrant, he must file a sworn information. Thereupon, a preliminary hearing may be held at once by the magistrate or a date set for one to be held in the future. At that juncture, however, the disposition of the prisoner becomes the responsibility of the magistrate; the responsibility of the arresting officer, as far as his personal custody is concerned, then ceases.

Turning now to the Act of 1909, it provides that persons authorized by the laws of the Commonwealth to make arrests "shall have the use, for a period not to exceed forty-eight hours . . . of . . . lockups . . . for the detention of prisoners until they can be disposed of according to law. . . ." "Until they can be disposed of according to law" can only mean "until they can be taken to a magistrate for preliminary hearing," since it has been shown that it is the duty of a police officer to take that step following an arrest.

Also it should be noted that the act does not discriminate between cases of arrests with a warrant and those without one; in the former cases the command of the warrant is plain, that the prisoner be *brought to the magistrate*, not locked up somewhere for as long as 48 hours. However, physical and temporal events may prevent prompt fulfillment of the duty to take the prisoner to a magistrate; extreme weather conditions may make travel to a magistrate's office impracticable or impossible; the prisoner may be in such

physical or mental condition that medical or other treatment must be obtained without delay; the hour may be late, or a magistrate simply unavailable immediately. In such (and similar) situations the officer should "have the use" of lockups, jails or prisons for the safekeeping of his prisoner; this use he may lawfully demand for a period of up to but not exceeding 48 hours under the provisions of the Act of 1909, which creates a right-duty relationship between policeman and jailer but in no manner alters the hitherto-outlined relationship between the officer and his prisoner. Commonwealth v. Deacon, 8 S. & R. 47, as long ago as 1822, recognized the right of an officer to lodge, and the duty of a jailer to receive, a prisoner under circumstances amounting to an emergency:

"Although the authorities are not decisive on this subject, they go a considerable length to establish the right of a constable to deposit a prisoner arrested without warrant, in the common jail *for safe keeping, till he can be carried before a magistrate* . . . although it is said, *the safer course is to cause him, as soon as convenience will permit, to be brought before a justice of the peace.* . . . This is the sum of what is found in the books on the subject; and without saying what would be the duty of a jailer in case of an arrest by a private person, I think it may fairly be inferred, he is bound to receive a prisoner offered by a constable for safe keeping." (Italics supplied)

The Act of 1909 simply limits the length of time during which an officer may lawfully demand the use of a prison or lockup for the safekeeping of his prisoner and provides for compensation for such use. Clearly, it confers no authority to detain a person "on suspicion" pending investigation without making any formal charge.

We are therefore of the opinion, and you are accordingly advised, that the Act of April 23, 1909, P. L.

141, 19 PS §§4, 5, does not authorize the incarceration of a person suspected of crime for a period of up to 48 hours pending investigation to determine whether a charge should be lodged against the suspect, but merely permits the temporary lodging for a period of up to but not in excess of 48 hours of a person under arrest because of the impossibility or impracticability, due to an emergency situation beyond the control of the arresting officer, of proceeding without unnecessary delay to take the prisoner before a committing magistrate. You are further advised that there is no authority in law for the arrest or detention of a person "on suspicion", nor is "suspicion" a proper charge to be lodged. Arrests must in every case, without exception, be based on probable cause, and the person arrested must be charged with a specific offense.