388 A.2d 689

COMMONWEALTH of Pennsylvania

v.

**Willie HILL, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 13, 1978.

Decided July 14, 1978.

Hugh C. Clark, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Marianne Cox, Asst. Dist. Attys., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant, Willie Hill (a/k/a Willie Frank Hill, Willie F. Hill, Frank Hill, and "Blood") was convicted of murder of the first degree of one Allen Murchinson (a/k/a Alan Murchinson) after a jury trial in Philadelphia. Post-verdict motions were denied and Hill was sentenced to life imprisonment. Other indictments charging criminal conspiracy and possession of an instrument of crime were nol-prossed. This appeal challenges the murder conviction and judgment of sentence.

From the Commonwealth's trial evidence, the jury could find the following: At approximately 8:00 p. m. on September 27, 1975, Hill, who was sixteen years old at the time of

this incident and a member of the Somerville gang, was standing on the corner of Godfrey and Ogontz Streets in Philadelphia with a number of his fellow gang members. Hill saw the decedent Murchinson, Bernard Ezell, who was the decedent's cousin, and another person known only as "Smoke" standing on an adjacent corner. Hill mentioned to his fellow gang members that one of them resembled "Sinbad" who allegedly had stabbed Hill and his brother Calvin sometime previously. Hill, along with fellow gang members Bruce Rozier and Larry McKinney (a/k/a McKenny), walked across the street to the boys and asked if they were from the Clang gang (a/k/a Klang) and whether one of them was named "Sinbad." After denying they were members of the Clang gang and any of their names were "Sinbad," Murchinson and his two friends walked away. Hill then shouted "[G]et them." Murchinson and his two companions, who had done nothing provocative, then started running away and a chase ensued. Hill, Rozier, and McKinney were joined by at least four fellow gang members, including one Terrence Davis who later pled guilty to murder of the third degree and criminal conspiracy and testified against Hill at his trial. "Smoke" escaped, as did Ezell, but only after being beaten by two gang members. Murchinson, however, was caught and thrown to the ground against some steps by McKinney, who held him by the legs while Hill sat on his chest. They along with the other gang members beat him. Murchinson repeatedly screamed for them to stop. Hill asked if anyone had a knife. McKinney provided one, and Hill then stabbed Murchinson at least twice in the heart and once in the liver. Hill and his companions then fled and Murchinson was found dead shortly after. Hill was arrested later that same night.

█ In this appeal, Hill contends that the trial court committed reversible error in three instances: by denying his motion for trial on the bill of indictment charging criminal conspiracy after the Commonwealth moved for trial on the murder indictment, and by denying his motions for a mistrial based on allegedly improper and inflammatory leading questions by the assistant district attorney and allegedly

improper and prejudicial comments by the assistant district attorney during his opening and closing arguments.*

■■ It is well established that the propriety of consolidating separate indictments for trial is ultimately within the sound discretion of the trial court and its determination in this regard will not be disturbed unless it clearly appears the rights of the defendant were thereby prejudiced. *Commonwealth v. Stock,* 463 Pa. 547, 551, 345 A.2d 654, 656 (1975) (citing cases). Instantly, Hill fails to point to any prejudice or possible prejudice following the court's ruling and we perceive none. Under 18 Pa.C.S.A. § 110 and *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974), Hill could not be subjected to another trial on charges arising from the same incident. Moreover, the trial court at the sentencing proceeding granted the Commonwealth's motion to nol-pros the charges for criminal conspiracy and weapons offenses. Under such circumstances, the refusal to consolidate the indictments for trial will not be ruled reversible error.

■■ The questioning by the assistant district attorney, which is the subject of Hill's second complaint, occurred during the direct examination of the co-defendant, Terrence Davis, who, as noted previously, pled guilty and testified as a Commonwealth witness against Hill. The relevant portion of the record is this:

"[By the assistant district attorney:] And did the Commonwealth or the State allow you to remain out on bail for your own protection until you are sentenced in this case?

"[Davis:] Yes.

"MR. CLARK [Defense Counsel:] Objection.

"THE COURT: Sustained.

"MR. CLARK: Move for mistrial.

"THE COURT: Your motion is denied, Mr. Clark.

---

* Although Hill does not here dispute the sufficiency of the evidence, our independent review of the record persuades us that it is sufficient to support a verdict of murder of the first degree.

"The jury will disregard anything about bail or reasons for bail.

"Q. At any rate, it was agreed that up until the time you are sentenced that you would be allowed to remain out on $10,000 bail. Is that correct?

"A. Yes.

"Q. And that at such time as you were sentenced you would be sent to an institution other than to a place where any of your co-defendants would be placed. Do you understand that?

"MR. CLARK: Objection to that.

"THE COURT: Objection sustained.

"The jury will disregard anything concerning sentencing."

While the first question included in the record quoted above referring to Davis being permitted to remain out on bail "for your own protection" was improper, it was not, under the circumstances, such an impropriety as to require the grant of a mistrial. Cf. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975) and the cases cited therein. As to the questions that followed concerning Davis' sentencing, Hill's counsel merely objected thereto and when the objection was sustained, he did not move for a mistrial. Since the questioning was not of the nature that would warrant the trial court's declaration of a mistrial *sua sponte*, and since counsel did not so move, the failure to declare a mistrial may not now be assigned as error. *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974); *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974).

The final complaint is directed to the assistant district attorney's opening statement to the jury and his summation at the end of the trial. It is argued that certain portions thereof warranted the court declaring a mistrial. The record discloses this:

■ In his opening statement, the assistant district attorney referred to the homicide "as another senseless killing." Hill's objection was sustained and the jury was instructed to

disregard the remark. No further relief was requested. Under such circumstances, Hill may not now complain of the court's failure to declare a mistrial. *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976).

■ During the summation of the assistant district attorney, the following ensued:

"And a lot of times that is a natural reaction, people looking for a way to give mercy in a case. If such a thought should cross your minds during your deliberations in this particular case I ask you to think of the mercy that this defendant—

"MR. CLARK [Defense Counsel:] Objection.

"THE COURT: Objection sustained.

"MR. MURRAY [Counsel for the Commonwealth:] I ask you to recall the testimony in this particular case regarding what was occuring [sic] at the time the decedent was on the ground, when he asked for mercy—

"MR. CLARK: Still objected to.

"THE COURT: Objection overruled."

The assistant district attorney then went on to say:

"You'll recall the testimony was that he was laying on the ground on his back surrounded by five or six members of the Somerville gang, being beaten with hands and fists and bottles. His only request—he wasn't an aggressor. He was there being beaten. He was laying there helpless, being beaten by five or six members of this gang. His only request was for mercy. His only request was that they stop, stop what they were doing and leave him alone. And this defendant's response was, give me a knife and he took it and he sunk it twice into this boy's heart who was laying there pleading for nothing more than his life. He stabbed him a third time in the liver and the diaphragm.

"The testimony is undisputed, these three boys had nothing to do with any gang, had nothing to do with anybody. They weren't bothering a soul. They were walking down the street after having had some beer purchased for them. They had a right to walk where they

were. They had a right not to have anyone else set upon them and kill them.

"In this particular case, ladies and gentlemen of the jury, many people have done their duty. The police, in arresting this defendant, have done their duty. So have the witnesses who were present, the witnesses who took part out there, Sergeant Stuckert guarding the scene, they've all done their duty in this case. Terrence Davis in another sort of way—he pled guilty—did his duty in this particular case. But it's all for naught, all for zero and all for a goose egg unless you do your duty."

Hill now argues the foregoing constituted an effort to inflame the emotions of the jury against him and to deny him a fair trial. We disagree. The details of the killing as described by Terrence Davis, as a Commonwealth witness, warranted the assistant district attorney's argument. Cf. *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974).

Judgment of sentence affirmed.