J-A08003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IAN GABRIEL | : | |
| | : | |
| Appellant | : | No. 2284 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010878-2014,
CP-51-CR-0012764-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IAN GABRIEL | : | |
| | : | |
| Appellant | : | No. 2285 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010878-2014,
CP-51-CR-0012764-2014

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 02, 2021**

Ian Gabriel appeals *nunc pro tunc* from the judgments of sentence after a consolidated jury trial. Appellant was found guilty of aggravated assault, robbery, rape, involuntary deviate sexual intercourse, conspiracy to commit

_____

[*] Former Justice specially assigned to the Superior Court.

rape, and sexual assault under CP-51-CR-0012764-2014 and aggravated assault, rape, involuntary deviate sexual intercourse, and sexual assault under CP-51-CR-0010878-2014. On appeal, Appellant contends the trial court erred in denying his pretrial motion to sever informations and motion to suppress DNA evidence. As we agree with the trial court that his claims are without merit, we affirm on the basis of the trial court opinion.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case. *See* Trial Court Opinion, 12/23/2019, at 2-4. Therefore, we have no reason to restate them at length here. We note briefly that after it was discovered that DNA samples collected from the rape kits of two different victims matched each other, Appellant was identified as the offender in both cases.

Appellant filed a motion for modification of sentence which was denied by operation of law. Appellant then sought and was granted post-conviction relief by having his direct appeal rights restored *nunc pro tunc*, based on trial counsel not being timely notified of the denial of the motion for modification

of sentence.[1] Thereafter, Appellant timely filed two *nunc pro tunc* notices of appeal.[2]

---

[1] On April 24, 2020, this Court issued rules to show cause why Appellant's appeals should not be quashed as interlocutory, finding there was no indication on the docket that Appellant's post-sentence motion had been ruled upon. After Appellant filed a response, the issue was referred to the merits panel for consideration. We decline to quash the appeal, finding this matter was already addressed by the PCRA court when it restored Appellant's appeal rights *nunc pro tunc*.

When a post-sentence motion is denied by operation of law, the clerk of courts is directed to enter an order on behalf of the court and "furnish a copy of the order … to … the defendant(s) and defense counsel...." Pa.R.Crim.P. 720(B)(3)(a). Our review of the record shows the clerk of courts failed to enter an order reflecting that Appellant's post-sentence motion was denied by operation of law, and failed to notify Appellant's counsel of the denial. The PCRA court found there was a breakdown in the system. **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003) (holding where the clerk of courts does not follow the rules of criminal procedure, such constitutes a breakdown in the lower court's processes). This "breakdown" was remedied by the PCRA court restoring Appellant's appeal rights. Therefore, we proceed to Appellant's substantive issues.

[2] Because Appellant included both trial court docket numbers on each notice of appeal, this Court issued rules to show cause why his appeals should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Appellant filed a response under each docket, stating he was aware separate notices needed to be filed, and therefore he filed separate notices under each docket but included both docket numbers due to the consolidated nature of the cases, and for purposes of judicial economy. In consideration of Appellant's response, our Court referred the **Walker** issue to the merits panel.

In light of our *en banc* decision in **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*), we decline to quash Appellant's appeals. In **Johnson***,* we "observe[d] that [Pa.R.A.P.] 341 and **Walker** make no mention of case numbers on a notice of appeal." **Id.** at 1148. Specifically, the *en banc* panel opined that where an appellant files a separate notice of appeal at each trial court docket, "[t]he fact that the notices [of appeal] contained [more than one trial court docket number] is of no consequence." **Id.** The
*(Footnote Continued Next Page)*

- 3 -

In his first issue, Appellant contends it was error for the trial court to deny his pretrial motion to sever informations pursuant to Pa.R.Crim.P. 582. *See* Appellant's Brief, at 17. Specifically, Appellant argues it was improper to consolidate the charges in a single trial, because evidence of either case was not admissible in the other, where (1) there was no shared motive, intent or common scheme of design between the cases, (2) the cases were not sufficiently similar, and (3) consolidation resulted in extreme prejudice against Appellant. *See id*.

The Pennsylvania Supreme Court has held that:

> [w]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant. Consolidation of separate offenses in a single trial is proper if the evidence of each of them would be admissible in a separate trial for the others and is capable of separation by the jury so that there is no danger of confusion. Evidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies. Such evidence is admissible, however, to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

---

*Johnson* Court explicitly overruled the majority decision of a three-judge-panel in *Commonwealth v. Creese*, 216 A.3d 1142 (Pa. Super. 2019) that held a notice of appeal was permitted to contain only one docket number. *See Johnson*, 236 A.3d at 1148. Because Appellant filed separate notices of appeal at each docket, as evidenced by separate time stamps, he has complied with *Walker.*

***Commonwealth v. Andrulewicz***, 911 A.2d 162, 168 (Pa. Super. 2006) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that Appellant's first issue merits no relief. The trial court opinion properly addresses Appellant's claim, and we adopt it as our own. ***See*** Trial Court Opinion, 12/23/2019, at 4-6 (concluding consolidation was proper because there were sufficient similarities between the two underlying assaults so that evidence of each assault would be admissible in the other case to prove a common design;[3] concluding there was no proof of jury confusion, stating there was no reason to believe the jury was unable to separate the evidence due to the length of the trial and the fact that different doctors and officers testified to the separate incidents; and concluding Appellant failed to prove he was prejudiced by consolidation).

In Appellant's second issue, he contends it was error for the trial court to deny his pretrial motion to suppress DNA evidence. Specifically, Appellant

---

[3] We note a majority of Appellant's argument centers on the differences he finds between the two cases. His argument misinterprets the law in this regard, as the separate indictments do not need to be identical, but rather the trial court simply needs to find, in its discretion, that the circumstances had sufficient similarities to warrant consolidation. ***See e.g. Commonwealth v. Dozzo***, 991 A.2d 898 (Pa. Super. 2010) (finding sufficient similarities between multiple robbery cases to warrant consolidation even where two of the robberies were committed with the assistance of a second individual because the evidence established a common scheme).

argues the Commonwealth was required to obtain a warrant to extract, analyze and profile his DNA as mandated by Article I, §8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution.

In reviewing the denial of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Raglin,* 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions de novo. *See Commonwealth v. Hughes*, 836 A.2d 893, 898 (Pa. 2003).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that Appellant's second issue merits no relief. The trial court opinion properly addresses Appellant's claims, and we adopt it as our own. *See* Trial Court Opinion, 12/23/2019, at 6-8 (concluding this Court has previously rejected the same argument in *Commonwealth v. Smith*, 164 A.3d 1255, 1260 (Pa. Super. 2017), in which we held that extraction analysis of DNA for identification purposes does not require a separate warrant because it is not being used to reveal private medical information).

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/2/2021*

# 006l8967

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          :          CP-51-CR-0012764-2014
                                      :          CP-51-CR-0010878-2014

                    v.          **FILED**                 :

                         DEC 23 2019          :

                         Office of Judicial Records: SUPERIOR COURT OF PENNSYLVANIA
                              Appeals/Post Trial    :          2284 EDA 2019
IAN GABRIEL                                         :          2285 EDA 2019

## OPINION

BRIGHT, J.

On July 26, 2014, Appellant was arrested and charged at CP-51-CR-0012764-2014 with

Attempted Murder, Aggravated Assault, Rape Forcible Compulsion and related charges. On the same

day, Appellant was arrested and charged at CP-51-CR-0010878-2014 with Aggravated Assault, Rape

Forcible Compulsion and related charges. On April 26, 2017, Appellant appeared before this Court and

entered a plea of Not Guilty. On May 9, 2017, a jury found Appellant Guilty of Aggravated Assault,

Robbery, Rape, Involuntary Deviate Sexual Intercourse, Conspiracy, and Sexual Assault under CP-51-

CR-0012764-2014 and Guilty of Rape, Aggravated Assault, Involuntary Deviate Sexual Intercourse, and

Sexual Assault under CP-51-CR-0010878-2014. The jury found Appellant Not Guilty of Attempted

Murder and Firearms Not To Be Carried Without License under CP-51-CR-0012764-2014. The

remaining charges on each Bill of Information were Nolle Prossed.

There was significant delay before Appellant's sentencing because of issues related to mental

health assessments, Appellant's refusal to cooperate with court ordered psychiatric evaluations, a defense

psychiatric evaluation, comatose behavior in court, and overall competency concerns. After competency

hearings which culminated on December 20, 2018, Appellant was sentenced to a lengthy term of

incarceration followed by substantial probation.

CP-51-CR-0010878-2014 Comm. v. Gabriel, Ian
Opinion

8413665021

1

On January 2, 2019, Appellant filed a Motion for Modification of Sentence which was denied by Operation of Law on May 2, 2019. Appellant then filed a Post-Conviction Relief Act Petition on July 9, 2019, requesting reinstatement of his appellate rights *nunc pro tunc* due to Appellant's counsel not being timely notified of the Denial of Motion for Modification of Sentence. On July 30, 2019, Appellant's appellate rights were reinstated *nunc pro tunc*. The instant appeal followed on August 10, 2019.

## ISSUES

Through Appellant's 1925(b) Statement the following issues are raised:

A. Whether it was error for the Trial Court to deny Appellant's pretrial Motion to Sever Informations.

B. Whether it was error for the Trial Court to deny Appellant's pretrial Motion to Suppress DNA Evidence.

## FACTS

Complainant E.M. testified that in the early morning hours of February 15, 2012 she was working as a prostitute in the area of Atlantic Avenue and Kensington Avenue in Philadelphia. N.T. 4/27/2017 at 77.[1] Around 12:30 am E.M. had a date with a regular client of hers named Marquese. Id. After her date she returned to the corner of Atlantic Avenue and Kensington Avenue around 1:30 am at which point a male pulled up in a car and flashed money at E.M. Id. at 78. E. M. got into the car to begin a discussion with the male about price and services and the male began to drive away. Id. at 78-79. The male drove a few blocks and E.M. was alerted to another male, Appellant, who was in the back seat of the car, concealed by clothing and debris. Id. Appellant put his hands around E.M.'s neck, choking her and beginning to drag her into the back seat while the driver parked the car and removed E.M.'s pants and boots. Id. at 79-81. Appellant tore off the rest of E.M.'s clothing and repeatedly punched her in the face. Id. at 81-83. Appellant then pulled E.M. fully into the back seat of the car and forced her to perform oral

---

[1] "N.T." refers to Notes of Testimony taken at the jury trial before the Honorable Gwendolyn N. Bright on April 26, 2017-May 9, 2017. The specific page to which reference is made follows the notation "N.T.".

sex on him while still punching her in the face. Id. at 83. The driver then came around to the back seat from outside of the car and began vaginally raping E.M. and beating her. Id. at 84-85. Appellant and the driver then flipped E.M. over in the back seat and the driver forced her to perform oral sex on him while Appellant vaginally raped her. Id. at 85. E.M. testified that she was crying and pleading with her assailants to stop, at which point Appellant began anally raping her. Id. at 86-87. The co-horts conversed about a gun while Appellant held a jacket over E.M.'s face and the driver held a weapon near her head. Id. at 90-92. A gun was fired once in the car, whereupon Appellant opened the door, E.M. fell out and ran. Id. at 94-95. As E.M. was running another shot was fired; she continued running and screaming for help until she arrived at a house and knocked on the door, which was opened by Tara Jordan. Id. at 95; N.T. 4/26/2017 at 48-51. Jordan, who observed a naked and crying E.M. at her door, called the police. Id. at 51-53. E.M. received medical treatment at Episcopal Hospital, and was examined at the Philadelphia Sexual Assault Response Center where a rape kit was performed and DNA evidence collected. N.T. 5/1/2017 at 14, 108, 113.

Complainant F.C. testified that around 10:00 pm on August 28, 2012 she walked a friend to the bus stop at Frankford Avenue and Church Street in Philadelphia. Id. at 26-28. Once her friend was on the bus, F.C. began to walk back to a house on Leiper Street. Id. at 29-30. F.C. testified that as she was walking up Church Street she felt a presence behind her and moved to the side but did not look around and then was punched in the right eye. Id. at 30-31. She then was dragged into the parking lot of a funeral home on Church Street. Id. at 32. As F.C. was dragged she was continually punched in the face by her assailant who kept telling her to shut up. Id. The assailant vaginally raped F.C. on the ground, and again as she was pushed against a wall while her head was banged on the concrete. Id. at 35-38. F.C.'s anus was digitally penetrated and was threatened with anal rape. Id. at 39-42. F.C. was beaten throughout the assault until the assailant left the scene. Id. The Complainant's face was so swollen from the face punching that she could not see the perpetrator. Id. at 33. When the assailant left, F.C. crawled out of the parking lot onto Church Street where a passersby rendered assistance and called the police. Id. at 44-45.

3

F.C. was taken to Temple Hospital where she stayed overnight, a rape kit was prepared along with collection of DNA evidence. N.T. 5/4/2017 at 9-11, 13, 15.

In September of 2012, the Special Victims Unit (SVU) was alerted that the DNA samples collected from the rape kits done for Complainant E.M. and Complainant F.C. were a match to each other. N.T. 5/2/2017 at 132. In July of 2014 the CODIS database returned a match of the offender's DNA profile and the SVU was able to identify Appellant as the offender in both cases. Id. at 134. Complainant E.M. was shown a photo array and identified Appellant as one of her attackers. Id. at 135. An arrest warrant was prepared and Appellant was arrested on July 26, 2014. Id. at 137.

## DISCUSSION

Appellant first avers that it was improper to consolidate the charges regarding the two Complainants. "It is well-settled that the propriety of consolidating separate indictments for trial is ultimately within the sound discretion of the trial court and its determination in this regard will not be disturbed unless it clearly appears the rights of the defendant were thereby prejudiced." Commonwealth v. Stock, 345 A.2d 654, 656 (Pa. 1975); Commonwealth v. Patrick, 206 A.2d 295 (Pa. 1965); Commonwealth ex rel. Bolish v. Banmiller, 151 A.2d 480 (Pa. 1959). Pennsylvania Rule of Criminal Procedure 582 states, "Offenses charged in separate indictments or informations may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582 (A)(1)(a).

Evidence of other crimes is admissible at trial when it tends to prove motive, intent, absence of mistake or accident or a common scheme, plan or design which makes the commission of two or more crimes so intertwined with each other that proving one tends to prove the other. Commonwealth v. Peterson, 307 A.2d 264, 269 (Pa. 1973). In establishing a common scheme, plan or design there is no requirement that crimes be identical, rather similarities in victims, location, defendant's action and other commonalities will be considered. Commonwealth v. O'Brien, 836 A.2d 966, 969 (Pa. Super 2003).

4

Here, the two assaults occurred within a mile and a half of each other about six months apart in February and August of 2012. N.T. 04/27/2017 at 7-8, N.T. 05/02/2017 at 17. Both victims were slightly built black females in their mid-twenties. Exhibit C-16, Medical Records, Temple University Hospital, N.T. 04/27/2017 at 94, Exhibit C-49, Medical Records, Temple University Hospital. In both instances, Appellant took the victims by surprise, in F.C.'s case coming from behind her on the street and in E.M.'s case by hiding behind her in the back seat of the car. N.T. 04/27/2017 at 79, N.T. 05/01/2017 at 30-31. During both incidents Appellant repeatedly beat the victims throughout the assault. N.T. 04/27/2017 at 83, N.T. 05/01/2017 at 32. Appellant vaginally raped both victims. N.T. 04/27/2017 at 85, N.T. 05/01/2017 at 35. Appellant anally raped E.M. and attempted to anally rape F.C. N.T. 04/27/2017 at 87, N.T. 05/01/2017 at 38-39. Appellant was vocal and verbally abusive during both attacks, threatening both victims. N.T. 04/27/2017 at 86, N.T. 05/01/2017 at 36-37. Appellant ripped off both victims' clothing, leaving them naked when he fled the scene of the assault. N.T. 04/27/2017 at 81, N.T. 05/01/2017 at 34-35. Appellant took personal items from both victims, including cell phones and purses. Exhibit C-3, E.M. Statement to Police, N.T. 05/01/2017 at 43-44. Both assaults took place in remote locations in the early morning hours when no other people were around. N.T. 04/27/2017 at 77-78, N.T. 05/01/2017 at 44-45. Both victims were left alone, beaten and naked on the street. N.T. 04/27/2017 at 96, N.T. 05/01/2017 at 42.

Case law shows that similarities of victims and crimes, such as the ones here, are sufficient for admissibility and therefore sufficient for consolidation. O'Brien supra at 970 (sexual assaults on victims of the same race, gender and similar age to Complainant were admissible despite 14 years passing between crimes and varying details in the commission of the assaults); Commonwealth v. Hughes, 555 A.2d 1264 (Pa. 1989) (sexual assault of a victim of similar age to Complainant was admissible because it was also a sexual assault, occurred at a similar time of day and in a similar location and the victim was alone at the time of the assault); Commonwealth v. Newman, 598 A.2d 275 (Pa. 1991) (consolidation of two rapes cases upheld because evidence of each would be admissible in the other as a common design

5

because, despite drastic differences in victims, the commission of the rape was similar). Here, the assaults of E.M. and F.C. are strikingly similar in all the ways listed above. Evidence of each assault would be admissible to prove a common design and therefore consolidation was proper.

Further, Rule 582 requires that the evidence of each crime be of the type that is able to be separated to avoid confusion for the jury. Pa.R.Crim.P. 582 (A)(1)(a). The jury in this trial heard five days of testimony from April 26, 2017 through May 8, 2017. Both Complainants testified. E.M. testified on April 27, 2017. F.C. testified on May 1, 2017. Each Complainant was examined by different doctors and each incident was responded to by different police officers. All doctors and officers testified to the isolated events they observed with either Complainant. There is no indication by Appellant that the evidence was of a nature that was confusing to the jury and no reason to believe the jury was unable to separate the evidence.

Finally, the decision of the trial Court to consolidate informations should not be disturbed unless there is a clear appearance that the rights of the defendant have been prejudiced. Stock *supra* at 656. Appellant makes no claims regarding how he was prejudiced by the consolidation. Pennsylvania Rule of Evidence 404(b) provides the standard for prejudice when introducing evidence of other crimes. "Evidence of a crime, wrong, or other act ... in a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice". Pa.R.E. 404(b)(3). In order to be too prejudicial to be admissible, evidence must be so far more prejudicial than probative that its inflammatory nature renders any probative value de minimus in comparison. Commonwealth v. Peer, 684 A.2d 1077, 1083 (Pa. Super 1996). Here, the evidence of each crime was similar in nature, such that it is improbable that the evidence of one crime would so inflame the jury's sensibilities after already hearing the evidence of the other. Further, there is no indication that any prejudice was suffered by Appellant.

Appellant next contends that the Trial Court erred in denying Appellant's pretrial Motion to Suppress DNA Evidence. On July 13, 2014 Search Warrant Number 182624 was executed. The warrant lists as items to be search for and seized: "Oral swab from Ian Gabriel DOB 02/07/91 who is incarcerated

6

at CFCF 8301 State Road." The warrant further details as a specific description of premises and/or persons to be searched: "Oral swab for DNA comparison from Ian Gabriel DOB 02/07/91."

Appellant relies on United States v. Davis to support his contention that his Fourth Amendment right was violated by the collection and extraction analysis of his DNA. 690 F.3d 226 (4th Cir. 2012). In Davis, the Fourth Circuit held that DNA extraction analysis is a search in itself under the Fourth Amendment, because there are unique privacy rights in the information that can come from the tests. Id. at 243. The Davis Court was dealing with a DNA extraction that was the result of a warrantless search when Davis was the victim of a crime and then was saved in CODIS until Davis himself was matched as the perpetrator of a separate crime. Id. Despite holding that the DNA extraction initially was an unreasonable search, the Fourth Circuit upheld Davis' conviction and the denial of the Motion to Suppress DNA Evidence based on the good faith exception to the exclusionary rule. Id. at 257. The Pennsylvania Superior Court has addressed Davis and clarified its holdings. Commonwealth v. Smith, 164 A.3d 1255. The Appellant in Smith made the same contention as the Appellant here, that although his DNA was collected pursuant to a search warrant, the extraction analyses required a separate warrant and therefore was a search in violation of the Fourth Amendment. Id. at 1257-1258. The Superior Court flatly denied this assertion. Id. The Court in Smith held that extraction analyses of DNA for identification purposes does not require a separate warrant because it is not, as Smith and the Appellant here feared, being used to reveal private medical information but instead it is used for identification. Id. at 1260. Therefore, Appellant's claim that the Trial Court erred in Denying his Motion to Suppress DNA Evidence is meritless.

## CONCLUSION

Appellant's claims on direct appeal are meritless and relief should be denied.

BY THE COURT

_____
BRIGHT, J.

DATE: 12/23/19

8